**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARTIN JOHN GONZALES,

      Plaintiff,

      v.                         Civ. No. 14-245 JCH/KK

SIERRA MARTINEZ *et al.*,

      Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on the *Martinez* Report on Behalf of Defendants Sierra Martinez, Julie Mendez, and Kimberly Valenzuela ("*Martinez* Report") filed on June 23, 2016. (Doc. 54.) By an Order of Reference filed on October 14, 2015, the Court referred this matter to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. (Doc. 40.) The undersigned, having meticulously reviewed the parties' submissions and the relevant law, and being otherwise fully advised, recommends that the motion to dismiss or for summary judgment incorporated in the *Martinez* Report be granted as to Plaintiff's federal constitutional claims. The undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims and that the Court dismiss these claims without prejudice.

**I.  Introduction and Procedural History**

This case arises out of Plaintiff's claims that Defendants violated his federal and state constitutional rights by tampering with his legal mail on August 21, 2013, August 30, 2013, October 17, 2013, and January 30, 2015, while he was incarcerated at the Springer Correctional

Center ("SCC").[1]  (Docs. 1, 17, 24.)  On this basis, Plaintiff asserts claims against Defendants Sierra Martinez, Julie Mendez, and Kimberly Valenzuela based on 42 U.S.C. § 1983, the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article II, Sections 13 and 18 of the New Mexico Constitution.  (*Id.*)  Plaintiff filed this lawsuit on March 12, 2014, amended his complaint on November 20, 2014, and supplemented it on April 16, 2015.  (*Id.*)  On April 12, 2016, the Court ordered Defendants to file a *Martinez* Report, which they did on June 23, 2016, and in which they incorporated motions for the Court to dismiss or grant them summary judgment on Plaintiff's claims.  (Docs. 49, 54.)  Defendants' *Martinez* Report and incorporated motions are now before the Court.

## II.  Analysis

Under Federal Rule of Civil Procedure 56, this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp*., 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co*., 11 F.3d 1535, 1539 (10th Cir. 1993).

---

[1] In his amended complaint, Plaintiff also makes passing references to two other incidents of mail "tampering," possibly on March 17, 2014 and May 8, 2014.  (Doc. 17 at 2, 7, 11, 27-29.)  However, Plaintiff's allegations regarding these incidents are so bare and conclusory that the Court cannot even determine whether Plaintiff intends to assert claims on the basis of them, much less discern a plausible legal or factual basis for doing so.  (*See generally id.*)  Moreover, the materials Plaintiff attached to his amended complaint regarding these incidents suggest that any damage to the mail in question occurred before it reached the SCC.  (*Id.* at 28-29.)  For these reasons, to the extent Plaintiff does intend to assert claims on the basis of these two incidents, the Court recommends that they be dismissed for failure to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citations omitted).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  For purposes of summary judgment, a prisoner's pleading is treated as an affidavit if it alleges specific facts based on the prisoner's personal knowledge and has been sworn under penalty of perjury.  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).  "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Id.* at 1110.  However, "it is [not] the proper function of the district court to assume the role of advocate for the *pro se* litigant."  *Id.*

When reviewing a motion for summary judgment, the Court must keep in mind three principles.  First, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue of material fact exists, requiring a trial.  *Anderson*, 477 U.S. at 249.  Second, the Court must construe all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor.  *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).  Finally, the Court cannot decide credibility issues.  *Anderson*, 477 U.S. at 255.  "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor."  *Id*. at 257.

A.    **Proposed Findings of Fact**

Viewing the record evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court proposes to make the following findings of fact:

1.      From January 25, 2012 to March 31, 2015, the SCC had in place a policy regarding inmate grievances ("SCC Grievance Policy").  (Doc. 54-1 at 19 ¶ 8; Doc. 54-2 at 21 ¶ 6.)  This policy allowed inmates to grieve prison employees' "decisions regarding mail."  (Doc. 54-1 at 25-26.)

2.      The SCC Grievance Policy required an inmate to first file an "inmate informal complaint" within five days of the incident to be grieved.  (Doc. 54-2 at 2.)

3.      The SCC Grievance Policy required the inmate to then file an "inmate grievance" within twenty days of the incident to be grieved if the informal complaint did not result in a resolution.  (*Id.*)

4.      The SCC Grievance Policy required the facility's grievance officer to review and investigate the inmate's grievance, and recommend a disposition to the warden, within twenty days of receiving the grievance.  (*Id.* at 5.)

5.      The SCC Grievance Policy required the warden to decide the inmate's grievance within fifteen days of receiving the grievance officer's recommendation.  (*Id.*)

6.      The SCC Grievance Policy permitted an inmate dissatisfied with the warden's decision to appeal that decision to the Office of the Secretary of Corrections within seven days of receiving the warden's decision.  (*Id.* at 6.)

7.      The SCC Grievance Policy required the Secretary of Corrections, or his or her designee, to issue a "final decision" on an inmate grievance within ten days of receiving an appeal.  (*Id.*)

8.      Pursuant to the SCC Grievance Policy, "[e]xpiration of a time limit at any stage without a decision . . . entitle[d] the grievant to move on to the next level for review."  (Doc. 54-1 at 27.)

9.      From June 29, 2012 through January 30, 2015, the SCC also had in place a policy regarding prisoners' mail ("SCC Mail Policy").  (Doc. 54-2 at 21-22 ¶¶ 7, 8.)

10.     According to the SCC Mail Policy,

> [i]ncoming . . . legal mail . . . may be opened, inspected, and read to the limited
> extent necessary to determine its legitimacy[,] in the presence of the inmate in an
> appropriate, secure area of the facility by the Warden or a designee to help
> determine if the mail is legitimate, contains contraband, or when there is an
> indication of contamination.

(Doc. 54-3 at 5, 22.)

11.     The SCC received mail for Plaintiff from the New Mexico Judicial Standards
Commission on August 21, 2013 ("**August 21 Item**").  (Doc. 54-1 at 9 ¶ 10; *id.* at 11.)

12.     The August 21 Item was sealed and marked as legal mail when it arrived at the SCC.
(Doc. 54 at 6.)

13.     Plaintiff received the August 21 Item on August 21, 2013.  (Doc. 54-1 at 11.)

14.     When Plaintiff received the August 21 Item, the envelope had been opened and
documents were missing from it.  (Doc. 1 at 4; Doc. 1-1 at 1; Doc. 59 at 3.)

15.     Plaintiff's brother later obtained the missing documents from the New Mexico Judicial
Standards Commission and sent them to Plaintiff.  (Doc. 1-1 at 1; Doc. 59 at 3.)

16.     Plaintiff filed an inmate informal complaint regarding the August 21 Item on October 18,
2013.  (Doc. 1-1 at 19.)  The informal complaint was untimely pursuant to the SCC Grievance
Policy, which required Plaintiff to file an informal complaint regarding the August 21 Item by
August 26, 2013.  (Doc. 54-2 at 2.)

17.     Plaintiff filed an inmate grievance regarding the August 21 Item on October 24, 2013.[2]
(Doc. 1-1 at 15.)  The grievance was untimely pursuant to the SCC Grievance Policy, which
required Plaintiff to file an inmate grievance regarding the August 21 Item by September 10,
2013.  (Doc. 1-1 at 16; Doc. 54-2 at 2.)

---

[2] On the grievance form, Plaintiff wrote that he filed the grievance on October 24, *2012*; this was clearly an error in
light of the fact that the incident Plaintiff sought to grieve occurred on August 21, *2013*.  (Doc. 1-1 at 15.)

18.     Plaintiff never appealed any prison official's denial of, or failure to timely act on, his grievance regarding the August 21 Item to the Office of the Secretary of Corrections or his or her designee.  (Doc. 54-1 at 19 ¶ 11; *id.* at 27; Doc. 54-2 at 6.)

19.     The SCC received mail for Plaintiff from the American Civil Liberties Union of New Mexico on August 30, 2013 ("**August 30 Item**").  (Doc. 54-1 at 9 ¶ 11; *id.* at 12.)

20.     The August 30 Item was sealed and marked as legal mail when it arrived at the SCC. (Doc. 54 at 6-7.)

21.     Plaintiff received the August 30 Item on August 30, 2013.  (Doc. 54-1 at 12.)

22.     When Plaintiff received the August 30 Item, the envelope had been opened but nothing was missing from it.  (Doc. 1 at 4; Doc. 1-1 at 2-3; Doc. 54-1 at 10 ¶ 17; Doc. 59 at 4.)

23.     Plaintiff filed an inmate informal complaint regarding the August 30 Item on October 18, 2013.  (Doc. 1-1 at 19.)  The informal complaint was untimely pursuant to the SCC Grievance Policy, which required Plaintiff to file an informal complaint regarding the August 30 Item by September 4, 2013.  (Doc. 54-2 at 2.)

24.     Plaintiff filed an inmate grievance regarding the August 30 Item on October 24, 2013.[3] (Doc. 1-1 at 15.)  The grievance was untimely pursuant to the SCC Grievance Policy, which required Plaintiff to file a grievance regarding the August 30 Item by September 19, 2013.  (Doc. 1-1 at 16; Doc. 54-2 at 2.)

25.     Plaintiff never appealed any prison official's denial of, or failure to timely act on, his grievance regarding the August 30 Item to the Office of the Secretary of Corrections or his or her designee.  (Doc. 54-1 at 19 ¶ 11; *id.* at 27; Doc. 54-2 at 6.)

---

[3] Again, on the grievance form, Plaintiff wrote that he filed the grievance on October 24, ***2012***; this was clearly an error in light of the fact that the incident Plaintiff sought to grieve occurred on August 30, ***2013***.  (Doc. 1-1 at 15.)

26.     The SCC received mail for Plaintiff from the New Mexico Supreme Court on October 17, 2013 ("**October 17 Item**").  (Doc. 1 at 2, 5; Doc. 17 at 3; Doc. 54-1 at 9 ¶ 12; *id.* at 13.)

27.     The October 17 Item was sealed when it arrived at the SCC.  (Doc. 54 at 6.)

28.     The October 17 Item was not addressed to Plaintiff.  (Doc. 54-1 at 9 ¶ 13; *id.* at 13.)

29.     Defendant Julie Mendez opened the October 17 Item outside Plaintiff's presence and threw away the envelope.  (Doc. 1-1 at 13; Doc. 17 at 3, 23; Doc. 54-1 at 9 ¶¶ 12-14; *id.* at 13.)

30.     Later that day, Defendant Sierra Martinez put the October 17 Item in a "regular" envelope and left it with a corrections officer to deliver to Plaintiff.  (Doc. 17 at 23; Doc. 54-1 at 9 ¶¶ 12-14.)

31.     Plaintiff received the October 17 Item on October 17, 2013.  (Doc. 17 at 11; Doc. 54-1 at 13.)

32.     Documents were missing from the October 17 Item when Plaintiff received it.  (Doc. 1 at 5; Doc. 1-1 at 4-5; Doc. 17 at 11-12.)  As a result, Plaintiff missed the deadline to appeal the dismissal of his first habeas corpus petition in Cause Number D-1215-CR-2007-00129.  (Doc. 1-1 at 4-5; Doc. 60 at 12-14.)  Plaintiff later filed a second habeas corpus petition in the same case, and was ultimately successful in getting his sentence reduced.  (Doc. 54-2 at 19-20; Doc. 60 at 13-14.)

33.     Plaintiff filed an inmate informal complaint regarding the October 17 Item on October 18, 2013.  (Doc. 1-1 at 17.)  The informal complaint was timely pursuant to the SCC Grievance Policy.  (Doc. 54-2 at 2.)

34.     Plaintiff filed inmate grievances regarding the October 17 Item on October 25, 2013 and November 15, 2013.  (Doc. 1-1 at 10; Doc. 17 at 18.)  Plaintiff's October 25 grievance was timely, and his November 15 grievance was untimely, pursuant to the SCC Grievance Policy,

which required Plaintiff to file a grievance regarding the October 17 Item by November 6, 2013. (Doc. 54-2 at 2.)

35.     On November 21, 2013, Plaintiff received the warden's denial, on substantive grounds, of his November 15 grievance.  (Doc. 1-1 at 8.)

36.     Plaintiff never appealed any prison official's denial of, or failure to timely act on, either of his grievances regarding the October 17 Item to the Office of the Secretary of Corrections or his or her designee.  (Doc. 54-1 at 19 ¶ 11; *id.* at 27; Doc. 54-2 at 6.)

37.     The SCC received mail for Plaintiff from the Clerk of the United States District Court for the District of New Mexico on January 30, 2015 ("**January 30 Item**").  (Doc. 54-1 at 15 ¶ 9; *id.* at 17.)

38.     The January 30 Item was sealed and marked as legal mail when it arrived at the SCC. (Doc. 54 at 6-7.)

39.     Plaintiff received the January 30 Item on January 30, 2015.  (Doc. 54-1 at 17.)

40.     When Plaintiff received the January 30 Item, it consisted of one envelope containing two documents.  (Doc. 24 at 10-11.)   An unidentified SCC employee had removed one of the documents from its original envelope and placed it in the other document's envelope before delivering the item to Plaintiff.   (*Id.*)   However, no documents were missing from the item. (Doc. 54 at 8; Doc. 54-1 at 16 ¶ 17.)

41.     On January 30, 2015 at the SCC, "some mail . . . was exposed to water, or was otherwise damaged, when in the custody of the canine (K9) officer, as the mail is subjected to scrutiny to prevent contraband from entering the prison."  (Doc. 54-1 at 15 ¶ 13.)

42.     Plaintiff filed an inmate informal complaint regarding the January 30 Item on February 10, 2015.  (Doc. 24 at 6.) The informal complaint was untimely pursuant to the SCC Grievance

Policy, which required Plaintiff to file an informal complaint regarding the January 30 Item by February 4, 2015.  (Doc. 54-2 at 2.)

43.     Plaintiff filed an inmate grievance regarding the January 30 Item on February 13, 2015. (Doc. 24 at 9.)  The grievance was timely pursuant to the SCC Grievance Policy.  (Doc. 54-2 at 2.)

44.     On February 19, 2015, Plaintiff received the warden's denial, on substantive grounds, of his February 13, 2015 grievance.  (Doc. 24 at 14-15.)

45.     Plaintiff appealed the warden's denial of his February 13, 2015 grievance to the Office of the Secretary of Corrections on February 23, 2015.  (*Id.*)  The appeal was timely pursuant to the SCC Grievance Policy.  (Doc. 54-2 at 6.)

46.     Jerry Roark, Director of Adult Prisons for the New Mexico Corrections Department, denied Plaintiff's appeal on February 23, 2015.  (Doc. 24 at 18.)

47.     In unsworn statements attached to his informal compliant, grievance, and departmental appeal regarding the January 30 Item, Plaintiff wrote that "Mr. Lucero," his case worker, told him that "Mrs. Guterrez," a new mail clerk, told Mr. Lucero that the original envelope for one of the documents in the January 30 Item was wet and torn, and she therefore put that document in the other document's envelope.  (Doc. 24 at 6-7, 10-11, 16-17.)

48.     The grievance officer who investigated Plaintiff's informal complaint and grievance regarding the January 30 Item reported to Plaintiff that there was a "tag" on the envelope Plaintiff received "stating the original envelope had been damaged by the K-9 Officer."  (Doc. 24 at 8, 14.)  The grievance officer also noted that Plaintiff's own statements indicated that he had already been given "an explanation of what happened to [his] legal mail."  (*Id.*)

49.      In an unsworn addendum to his amended complaint, Plaintiff alleges that Ellen Herrera, then a canine unit corrections officer at the SCC, told him the canine unit did not damage the envelope that was missing from the January 30 Item when Plaintiff received it.  (Doc. 24 at 1-5.)

**B.      Legal Analysis**

1.      <u>Defendants are entitled to summary judgment on Plaintiff's federal constitutional claims</u>.

a.      *The PLRA bars Plaintiff's federal constitutional claims regarding the August 21, August 30, and October 17 Items.*

Defendants first raise the affirmative defense that Plaintiff failed to exhaust his administrative remedies regarding the August 21, August 30, and October 17 Items as required by the Prison Litigation Reform Act ("PLRA").[4]  (Doc. 54 at 14-16.)  The PLRA states that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is mandatory; "unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Moreover, "[t]o exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient."  *Fields v. Okla. State Pen.*, 511 F.3d 1109, 1112 (10th Cir. 2007).  "[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  Prisoners must exhaust all available remedies even if those remedies "appear to be futile at providing the kind of remedy sought[.]"  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

---

[4] Defendants concede that Plaintiff exhausted his administrative remedies with respect to the January 30 Item.  (Doc. 54 at 14-16.)

In the present matter, the record evidence viewed in the light most favorable to Plaintiff establishes that, as a matter of law, Plaintiff did not exhaust the administrative remedies available to him at the SCC regarding the August 21, August 30, and October 17 Items.  With respect to the August 21 and August 30 Items, it is undisputed that Plaintiff failed to comply with the SCC's grievance procedures in at least three respects:  (1) his inmate informal complaint was untimely; (2) his inmate grievance was untimely; and, (3) he failed to appeal any denial of or inaction on his grievance to the Office of the Secretary of Corrections.  Similarly, the undisputed record evidence shows that Plaintiff failed to comply with the SCC's grievance procedures regarding the October 17 Item, because he failed to appeal any denial of or inaction on his grievances.  Moreover, Plaintiff has submitted no cognizable evidence that such an appeal was unavailable to him; the Court notes that he was subsequently able to appeal the denial of his grievance regarding the January 30 Item.

In short, with respect to the August 21, August 30, and October 17 Items, Plaintiff did not "complete the administrative review process in accordance with the applicable procedural rules, including deadlines," and so failed to exhaust his administrative remedies within the meaning of the PLRA.[5]  *Woodford*, 548 U.S. at 88, 93.  The PLRA therefore bars Plaintiff's federal constitutional claims based on Defendants' alleged tampering with these three items.  *Jones*, 549 U.S. at 211.  For these reasons, the Court recommends that Defendants' motion for summary judgment be granted on Plaintiff's federal constitutional claims regarding the August 21, August 30, and October 17 Items.

---

[5] Indeed, Plaintiff appeared to concede as much in his response to the *Martinez* Report, from which he omitted any claim that he filed (or tried to file) departmental appeals regarding the August and October 2013 incidents, and in which he wrote, "[e]ven on the 4th mail incident when [I] did exhaust all my administrative remedies . . . ."  (Doc. 59 at 2.)

        b.      *Defendants are entitled to summary judgment on Plaintiff's federal constitutional claims regarding the January 30 Item.*

Defendants next argue that the Court should dismiss or grant them summary judgment on Plaintiff's federal constitutional claims regarding the January 30 Item, because Defendants did not violate Plaintiff's constitutional rights by opening this item outside his presence.  (Doc. 54 at 16-19.)   Defendants also argue that they are entitled to qualified immunity, because their handling of the January 30 Item did not violate a clearly established federal constitutional right of which a reasonable official would have known.  (*Id.* at 19-21.)  The Court need not decide whether the constitutional rights on which Plaintiff relies were "clearly established" for purposes of qualified immunity, because the record evidence viewed in the light most favorable to Plaintiff shows that, as a matter of law, Defendants' handling of the January 30 Item did not violate Plaintiff's federal constitutional rights.  *See Pearson v. Callahan*, 555 U.S. 223, 231-32 , 236 (2009) (to resolve qualified immunity defense, court must decide whether the facts "make out a violation of a constitutional right," and "whether the right at issue was clearly established"; court may address two prongs in any order).

Plaintiff's federal constitutional claims regarding the January 30 Item are fatally deficient in two respects.  First, to succeed on a claim brought pursuant to 42 U.S.C. § 1983, a plaintiff must show that the defendant had some personal involvement in the alleged constitutional violation.  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  Here, Plaintiff has presented no evidence that Sierra Martinez, Julie Mendez, or Kimberly Valenzuela – the three Defendants named in Plaintiff's amended complaint – ever handled, made any decisions regarding, or were even aware of, the January 30 Item.  As such, his claims against these Defendants for mishandling the January 30 Item must fail.  Second, even if Plaintiff had sued the SCC employee or employees who did handle the January 30 Item, Defendants have shown that

there is an absence of evidence to support Plaintiff's federal claims regarding this item, and Plaintiff has failed to designate any specific facts showing that there is a genuine issue of material fact for trial. *Bacchus Indus., Inc.*, 939 F.2d at 891.

Courts have identified three potential sources of constitutional protection for an inmate's legal mail.[6]  First, the mishandling of such mail may implicate the inmate's right of access to the courts, which derives from the substantive due process clauses of the Fifth and Fourteenth Amendments and the petition clause of the First Amendment. *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010); *Villabona-Alvarado v. Rios*, 2009 WL 723308, at *3 (D. Colo. Mar. 18, 2009) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002)).  However, a prisoner alleging that a prison employee's mishandling of his legal mail violated his right of access to the courts must show, *inter alia*, that the mishandling "resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a [nonfrivolous] legal claim." *Simkins v. Bruce*, 406 F.3d 1239, 1243-44 (10th Cir. 2005) (internal quotation marks and citation omitted).

Here, there is absolutely no record evidence or allegation that the SCC's mishandling of the January 30 Item frustrated, impeded, or hindered Plaintiff's efforts to pursue a nonfrivolous legal claim.  On the contrary, the undisputed material facts show that Plaintiff received the January 30 Item the day it arrived at the SCC, and that no documents were missing from it. Thus, as to the January 30 Item, Plaintiff has failed to point to any cognizable evidence in the record demonstrating a genuine issue of material fact regarding a critical element of his claims based on the right of access to the courts, and Defendants are entitled to judgment as a matter of law on these claims. *Al-Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir. 2008); *Simkins*, 406 F.3d at 1243-44.

---

[6] The Eighth Amendment is not one of these sources.  Plaintiff has pointed to, and the Court is aware of, no cases holding that the Eighth Amendment is a source of protection for prisoners' legal mail.  Defendants are therefore entitled to summary judgment on Plaintiff's Eighth Amendment claims regarding the January 30 Item.

A second source of constitutional protection for prisoners' legal mail is the free speech clause of the First Amendment.  Pursuant to this clause, however,

> [w]hile a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation.  Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail.

*Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (internal citations and quotation marks omitted).  A prisoner cannot assert a First Amendment violation with respect to isolated incidents of mishandled legal mail where there is no evidence of improper motive.  *Bruscino v. Pugh*, 232 F. App'x 763, 764 (10th Cir. 2007)[7]; *Brown v. Williams*, 36 F. App'x 361, 363 (10th Cir. 2002); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

In this case, there is no cognizable record evidence that the SCC's mishandling of the January 30 Item was anything other than an innocent and isolated attempt to remedy inadvertent damage to Plaintiff's legal mail.  Defendants' *Martinez* Report, the grievance officer's reports, and even Plaintiff's own statements regarding what a mail clerk allegedly told his caseworker, all indicate that an SCC mail clerk removed a legal document from its original envelope and put it in another envelope from the same sender, because the original envelope was wet and torn. There is simply no evidence that this was a regular practice or done for an improper purpose.  As such, Plaintiff has failed to point to any evidence in the record demonstrating a genuine issue of material fact regarding a critical element of his free speech claims, to the extent he asserts such claims.

Plaintiff does allege that Ellen Herrera, then a canine unit corrections officer at the SCC, denied that her unit damaged the envelope in question.  However, even if the Court were to give

---

[7] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

any evidentiary weight to Plaintiff's unsworn allegations about Ms. Herrera's hearsay statements, they do not contradict the fundamental point, *i.e.*, that an SCC mail clerk opened the two envelopes outside Plaintiff's presence to remove a document from a wet, torn envelope and put it in a dry, intact one.  This action did violate the SCC Mail Policy, which states that an inmate's legal mail may only be opened in the inmate's presence.  However, without more, a mere policy violation does not make a constitutional violation, *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993), nor does it demonstrate an improper motive.  For all of the above reasons, the Court finds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law to the extent Plaintiff asserts claims regarding the January 30 Item based on the First Amendment's free speech clause.[8]  *Bruscino*, 232 F. App'x at 764; *Brown*, 36 F. App'x at 363; *Smith*, 899 F.2d at 944.

The third source of constitutional protection for prisoners' legal mail, the Sixth Amendment right to counsel, is clearly inapplicable to Plaintiff's claims regarding the January 30 Item.  The Sixth Amendment's "reach is only to protect the attorney-client relationship from intrusion." *Stanley*, 602 F.3d at 770 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974)).  Thus, this amendment applies to the mishandling of inmate legal mail only when the mail was from the inmate's lawyer or "pertained to legal representation."  *Id.*  Here, the parties agree that the January 30 Item was from the federal court clerk, and there is no allegation or evidence that the documents in it pertained to legal representation.  For all of the above reasons, the Court finds that there is no genuine dispute as to any material fact, and Defendants are entitled to judgment as a matter of law, on Plaintiff's federal constitutional claims regarding the January 30

---

[8] Plaintiff does not reference the First Amendment in his original and amended complaints.  (*See generally* Docs. 1, 17.)  The foregoing analysis demonstrates that any attempt to amend the complaint again to include such a reference would be futile.

Item.  The Court therefore recommends that Defendants' motion to dismiss or for summary judgment on these claims be granted.

        2.      <u>The Court should decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims.</u>

Finally, the Court must consider whether it should exercise supplemental jurisdiction over Plaintiff's state constitutional claims against Defendants.  Under 28 U.S.C. § 1367, the Court may decline to exercise supplemental jurisdiction over state law claims once "all claims over which it ha[d] original jurisdiction" have been dismissed.  28 U.S.C. § 1367(c)(3).  "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (citation omitted).  "[N]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1185 (D.N.M. 2014) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Should the Court adopt the undersigned's recommendation to grant Defendants summary judgment on Plaintiff's federal constitutional claims, it will be left only with Plaintiff's claims made pursuant to the New Mexico Constitution.  Whether to exercise supplemental jurisdiction over these claims is a matter entrusted to the Court's discretion, *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004), and the Tenth Circuit has indicated that the Court "usually should" decline to exercise such jurisdiction.  *Koch*, 660 F.3d at 1248.  Thus, and as a matter of comity, to promote justice, and to allow New Mexico's courts to interpret its constitution, the undersigned recommends that the Court in its discretion decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismiss these claims without prejudice.

### III.  Conclusion

For the reasons set forth above, the undersigned recommends that the Court grant the motion to dismiss or for summary judgment incorporated in Defendants' *Martinez* Report (Doc. 54) as to Plaintiff's federal constitutional claims, decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims, and dismiss the state constitutional claims without prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE